# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **JAMES R. SANDLIN and** | ) | **Case No. 06-03792-TOM-13** |
| **JAN H. SANDLIN** | ) | |
|     Debtors. | ) | |

---

| | | |
|---|---|---|
| **JAMES R. SANDLIN and** | ) | |
| **JAN H. SANDLIN, individually and on** | ) | |
| **behalf of all other similarly situated** | ) | |
| **Ameriquest Mortgage Company, Inc.** | ) | |
| **Mortgagors,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | **A.P. No. 08-00191** |
| **vs.** | ) | |
| | ) | |
| **AMERIQUEST MORTGAGE CO., INC.,** | ) | |
| **AMC MORTGAGE SERVICES, INC.** | ) | |
| **and Citi Residential Lending,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the following: the Plaintiffs', James R. Sandlin and Jan H. Sandlin (hereinafter, the "Plaintiffs"), Motion for Partial Summary Judgment (Adversary Proceeding (hereinafter, "A.P.") No. 121)[1](hereinafter, "Plaintiffs' Motion" cited as "Pls. Mot."); Ameriquest Mortgage Company (hereinafter, "Ameriquest") and AMC Mortgage Services, Inc.'s (hereinafter, "AMC") Response in Opposition to the Plaintiffs' Motion (A.P. No. 146)(hereinafter, "Ameriquest's Response" cited as "Amer. Resp."); Defendant Citi Residential Lending, Inc.'s (hereinafter, "CRL") Response in Opposition to the Plaintiffs' Motion (A.P. No. 150)(hereinafter,

---

[1]References to pleadings in the main bankruptcy case are referred to as "Proceeding No.," while references to pleadings in the adversary proceeding are referred as "A.P. No."

"CRL's Response" cited as "CRL Resp."); Plaintiffs' Reply to Ameriquest's Response (A.P. No. 152)(hereinafter cited as "Pls. Reply to Amer. Resp."); Plaintiffs' Reply to CRL's Response (A.P. No. 153)(hereinafter cited as "Pls. Reply to CRL Resp."); Ameriquest and AMC's Motion for Summary Judgment (A.P. No. 142)(hereinafter, "Ameriquest's Motion" cited as "Amer. Mot.") and Brief and Evidentiary Submission in Support of Ameriquest's Motion (A.P. No. 143)(hereinafter, "Ameriquest's Brief" cited as "Amer. Br."); Plaintiffs' Response to Ameriquest's Motion (A.P. No. 149)(hereinafter cited as "Pls. Resp. to Amer. Mot."); Ameriquest and AMC's Reply in Support of the Ameriquest Motion (A.P. No. 154)(hereinafter, "Ameriquest's Reply" cited as "Amer. Reply"); CRL's Motion for Summary Judgment and Memorandum of Law in Support of Its Motion for Summary Judgment (A.P. No. 144)(hereinafter, "CRL's Motion" cited as "CRL Mot."); Plaintiffs' Response to CRL's Motion for Summary Judgment (A.P. No. 148)(hereinafter cited as "Pls. Resp. to CRL Mot."); and CRL's Reply to Plaintiffs' Response to CRL's Motion (A.P. No. 155) (hereinafter, "CRL's Reply" cited as "CRL Reply"). Appearing at the August 31, 2009 hearing were: Lange Clark and Robert C. Keller, attorneys for the Plaintiffs; Michael Leo Hall and Steve Bumgarner, attorneys for Ameriquest; Rick Tozzi attorney for CRL; and Charles King, Assistant Chapter 13 Trustee. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the district court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in

---

[2]The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

2

28 U.S.C. § 157(b)(2)(A).[3]  This Court has considered the pleadings, arguments of counsel, and the law and finds and concludes as follows.[4]

## I.  FINDINGS OF FACT[5]

On October 4, 2006, the Plaintiffs filed for relief under Chapter 13 of the United States Bankruptcy Code (hereinafter, the "Petition Date").  (Proceeding No. 1) On March 31, 2006, prior to the filing of this bankruptcy case, the Plaintiffs received financing from Ameriquest pursuant to an Adjustable Rate Note (hereinafter, the "Note") in the principal amount of $70,200.00.  (*See* Amer. Br. 2 (citing Ameriquest Exhibit (hereinafter, "Amer. Ex.") A))  That same day, the Plaintiffs granted Ameriquest a mortgage (hereinafter, the "Mortgage") on their property to secure the Note.  (*Id.*) (The Note and the Mortgage may collectively be referred to herein as the "Loan".)  The property securing the Mortgage was located at: 107 Twin Lakes Road, Trussville, Alabama 35173 (hereinafter, the "Property").  (*Id.*)  The Note required the Plaintiffs to make their payments by the

---

Also, pursuant to the Eleventh Circuit's decision in *Fidelity & Deposit Co. v. Morris (In re Morris)*, 950 F.2d 1531, 1535 (11th Cir. 1992), the Court may retain jurisdiction over this adversary proceeding even though the underlying bankruptcy case was dismissed on December 23, 2009 (Proceeding No. 189 and Proceeding No. 190).  Ameriquest filed a Motion for Judgement on the Pleadings as to the Adversary Proceeding Due to Dismissal of Main Bankruptcy Case (A.P. No. 173) on February 10, 2010 based on this Court's dismissal of the underlying bankruptcy case.

[3]28 U.S.C. §157(b)(2)(A) provides:
(b)(2)Core proceedings include, but are not limited to–
(A) matters concerning the administration of the estate[.]

[4]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[5]Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files.  *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

3

first of each month, beginning June 1, 2006. (*See* Amer. Ex. A; Michael Gibson Affidavit (hereinafter, "Gibson Aff.") ¶ 3, Amer. Ex. D) The Plaintiffs timely made their first payment in June. (Gibson Aff. ¶ 6, Amer. Ex. D) However, the Plaintiffs were late in making the July and August payments, which resulted in the Plaintiffs incurring late fees totaling $61.56. (*Id.* at ¶ 7, Amer. Ex. D) The Plaintiffs submitted their September payment, but when the check was dishonored due to insufficient funds, Ameriquest returned it to Plaintiffs. (*Id.* at ¶ 9, Amer. Ex. D)

Following the Petition Date, AMC filed its proof of claim (hereinafter, the "Proof of Claim"), claim number 6, on November 2, 2006, in the amount of $71,429.27, which included an arrearage on the mortgage that accrued pre-petition. Addendum "A" to the Proof of Claim indicates that, as of the Petition Date, the Plaintiffs owed an arrearage of $1,323.42 based upon two missed payments of $615.54 each in September and October, 2006, plus late fees in the amount of $92.34 (hereinafter, the "Pre-Petition Arrearage"). The Plaintiffs' Second Amended Chapter 13 Plan (hereinafter the "Plan") proposed to pay their regular monthly mortgage payments directly to AMC beginning November, 2006 and to pay the Pre-Petition Arrearage with a fixed monthly payment of $50.00. (Proceeding No. 40) On December 28, 2006, the Court entered an order confirming the Plan (hereinafter, the "Confirmation Order")(Proceeding No. 45), which returned all property to Plaintiff that was unnecessary for fulfilling the Plan.

On January 8, 2007, Ameriquest filed a Motion for Relief from Stay (hereinafter, the "Motion for Relief") and supporting fact summary due to the Plaintiffs' default on post-petition payments. (Proceeding No. 47 and Proceeding No. 48) Several weeks later, on January 22, 2007, Ameriquest filed an amended fact summary along with the affidavit of Nadine Krueger (hereinafter, the "Krueger Affidavit" cited as "Krueger Aff."), a bankruptcy specialist for AMC. (Proceeding No. 54 and

4

Proceeding No. 55)  The Krueger Affidavit represents that the total post-petition delinquency included three missed payments of $615.54 each for November 2006 through January 2007 in addition to the assessment of two late charges totaling $61.56, one property inspection fee totaling $30.00 and bankruptcy fees and costs of $375.00, for a total delinquency of $2,313.18.  According to the Krueger Affidavit, the Plaintiffs tendered a payment on December 1, 2006 which was dishonored due to insufficient funds, and Ameriquest returned the check to the Plaintiffs.

On January 12, 2007, the Plaintiffs filed a Motion to Sell Property of the Estate (hereinafter, the "Motion to Sell").  (Proceeding No. 51) The Motion to Sell indicated that the Plaintiffs had a contract to sell their home for $109,000.00, which would pay off the Mortgage.  Ameriquest's response requested that the Court ensure that any proceeds from the sale of the Property be used to pay the Mortgage in full.  (Proceeding No. 56)  On February 20, 2007, the Department of Housing and Urban Development (hereinafter, "HUD") filed an objection to the Motion to Sell, alleging HUD had a valid mortgage on the Property and requesting that HUD's mortgage be paid in full from any proceeds from a sale of the Property.  (Proceeding No. 62)  Following a hearing before the Court on March 8, 2007, the parties settled their lien disputes through mediation with Mr. J. Thomas Corbett, the Chief Deputy Bankruptcy Administrator.  (*See* Proceeding No. 67)

On April 5, 2007, the Court held a hearing on the Motion to Sell and the Motion for Relief.  At this hearing, the parties reported that the settlement reached in mediation between the Plaintiffs, Ameriquest and HUD had fallen through.  Consequently, the parties requested a ruling on the Motion.  Mr. Sandlin testified at this hearing that the Plaintiffs had intended to sell their home to his brother, Mr. Bruce Sandlin.  Although the sales contract indicated that his brother would purchase the home for $109,000.00, he had only received approved financing for $98,500.00, and the

Case 08-00191-TOM    Doc 177    Filed 04/08/10    Entered 04/08/10 15:06:49    Desc Main
Document      Page 5 of 44

Plaintiffs agreed to sell it to him for this amount. (*See* Proceeding No. 51) However, due to the time delay from mediation, the lender for Mr. Bruce Sandlin withdrew the financing. Mr. Sandlin testified the Property appraised for $130,000.00, and they currently had it listed with an agent on the market for $129,000.00. Mr. Sandlin further indicated there was a potential buyer willing to pay this amount.

At the April 5 hearing, Mr. Sandlin was questioned about the Plaintiffs' missed payments to Ameriquest from October 2006 to April 2007. (*See* Gibson Aff. ¶¶ 12-13, Amer. Ex. D) He testified that they sent a payment to Ameriquest in December 2006, but when the check was dishonored due to insufficient funds, Ameriquest returned the check to them. (*See* Krueger Aff. 3, Proceeding No. 55) Mr. Sandlin explained that it was during this time period that he took leave from his job at Mazer under the Family Medical Leave [Act]. Mr. Sandlin testified that they had made one payment of $780.00 to the Trustee in March 2007.

On April 17, 2007, the Court entered a written order based upon the April 5 hearing (hereinafter, the "April Order") granting the Motion to Sell and conditionally denying the Motion for Relief. (Proceeding No. 78) Specifically, the Court ordered that if the sale of the Property did not occur by May 18, 2007, then Ameriquest would have relief from stay on May 21, 2007. The April Order further provided that from the sale proceeds all mortgages and liens of record be paid, along with "normal" closing costs. The Court further ordered that $2,500.00 from the net sale proceeds, if any, would be paid to the Trustee, along with a small distribution to the Plaintiffs.

The Plaintiffs did not close on the sale of the Property until June 29, 2007. (*See* Proceeding No. 90) Pursuant to the April Order, the automatic stay lifted as to Ameriquest on May 21, 2007. Nevertheless, Ameriquest apparently refrained from pursuing any of its remedies and was paid from

6

the sale proceeds. Following the sale of the Property for $123,000.00[6], the Plaintiffs filed an objection to Ameriquest's Proof of Claim based on the claim having been paid in full from the sale proceeds. (Proceeding No. 90) On August 8, 2007, Ameriquest responded to the objection by withdrawing its claim, indicating it was paid in full. (Proceeding No. 107) Subsequently, on September 11, 2007, the Court entered an Order which provided that Plaintiffs' objection to Ameriquest's Proof of Claim was moot based on the withdrawal of the claim. (Proceeding No. 112) On July 29, 2008, over a year after the sale of the Property, the Plaintiffs filed the complaint in this adversary proceeding against the Defendants (hereinafter, the "Amended Complaint" cited as "Am. Compl."), which was subsequently amended on September 29, 2008. (A.P. No. 1 and A.P. No. 13) On March 13, 2009, the Plaintiffs filed a Motion for Class Certification (hereinafter, the "Motion for Class Certification"). (A.P. No. 120)

## A. The Plaintiffs' Allegations

### 1. The Amended Complaint

In the Amended Complaint, the Plaintiffs allege the Defendants failed to disclose to the Plaintiffs and the Court certain post-petition fees and costs, specifically: $105.00 for a Brokers Price Opinion (hereinafter "BPO"); $120.50 for property inspections or property preservation; $2,051.50 for miscellaneous fees and costs; and $1,825.00 for attorneys' fees and statutory expenses. (Am. Compl. 4) The Plaintiffs allege the Defendants will try to collect these undisclosed, unapproved fees either during the case or upon the Plaintiffs receiving their Chapter

---

[6]In her deposition, Jan Sandlin indicated that their home ultimately sold for $123,000.00, despite Mr. Sandlin's representations in open court that the Property would sell for $129,000.00. (Jan Sandlin Deposition (hereinafter, "Jan Sandlin Depo.) 73:20-23, 74:1-5, Pls. Ex. G)

7

13 discharge, if the Defendants have not already collected the fees. (*Id.* at 5) The Plaintiffs

assert the following counts against the Defendants: Count One is for violation of the automatic

stay; Count Two is for contempt due to the assessment of the fees without this Court's approval;

Count Three is for unjust enrichment/disgorgement; Count Four is for violation of Rules 2016

and 3001 regarding the proper way to file a proof of claim; and Count Five is for objection to

claim. (*Id.* at 6-8) Plaintiffs' prayer for relief requests: declaratory relief regarding the alleged

undisclosed and unapproved fees; injunctive relief; and damages, fees and costs. (*Id.* at 12-13)

The Plaintiffs also allege that the Defendants' conduct has affected hundreds or thousands

of others. (*Id.* at 8) The Amended Complaint sets forth grounds for a class action, which are

reiterated in the Motion for Class Certification and supporting brief. (*Id.* at 9-12; A.P. No. 120)

### 2. The Plaintiffs' Motion for Partial Summary Judgment

The Plaintiffs' Motion is based on Count One of the Amended Complaint for violations

of the automatic stay. (Pls. Mot. 1) Generally, Plaintiffs allege that Defendants had in place

practices and procedures regarding the preparation and filing of a proof of claim to ensure the

non-disclosure of post-petition, pre-confirmation fees and charges, which, in this case, led to the

assessment and ultimate collection of certain undisclosed, unapproved post-petition, pre-

confirmation fees. (*See* Pls. Mot.) Plaintiffs contend that the assessment and ultimate collection[7]

of these undisclosed, unapproved fees amounted to violations of the automatic stay.

On November 2, 2006, Ameriquest filed the Proof of Claim in the Plaintiffs' bankruptcy

_____

[7]In their Response to Ameriquest's Brief, Plaintiffs allege that Ameriquest used Trustee
payments to satisfy the disputed undisclosed, unapproved fees in this case in violation of the
automatic stay. *See* Pls. Resp. to Amer. Br. 21 (citing Gibson Aff. ¶ 16, Amer. Ex. D).

8

case. (Pls. Mot. 14 (citing Pls. Ex. 31)) Thereafter, Ameriquest assessed the following fees to the Plaintiffs' account: on November 8, 2006, a $375.00 fee for attorney fees; on November 16, 2006, a $15.00 property preservation fee; and on December 19, 2006, another $15.00 property preservation fee.[8] (hereinafter collectively referred to as the "Fees")(Pls. Mot. 14 (citing Gibson Depo. 108-109, Pls. Ex. E; Pls. Ex. 29)) Ameriquest had not disclosed these Fees in the Proof of Claim nor did Ameriquest amend its Proof of Claim to disclose these Fees. (Pls. Mot. 15) Ameriquest sent the Plaintiffs a payoff statement which included $1,934.50 for corporate advances and other charges paid by Ameriquest. (Pls. Mot. 15 (citing Pls. Ex. 36; Gibson Depo. 133: 8-11, Pls. Ex. E)) Although the Plaintiffs allegedly questioned Ameriquest about this payoff amount prior to closing, the Plaintiffs proceeded with the sale and thus satisfied and paid the payoff amount with proceeds from the sale at closing. (*See* Pls. Mot. 15 (citing Jan Sandlin Deposition (hereinafter, "Jan Sandlin Depo.") 74: 9-23; 75:1-2, Pls. Ex. G))

On September 1, 2007 (several months after Plaintiffs' home was sold), CRL, pursuant to a Transaction Agreement and Second Amendment (hereinafter, collectively the "Transaction Agreement") acquired most of Ameriquest's assets and servicing rights (hereinafter, the "Transaction"). (Pls. Mot. 2 (citing Pls. Ex. 5, pp. 14-16; Pls. Ex. 6) CRL's acquisition included the servicing rights to the loan pool containing the Plaintiffs' Loan. (Pls. Mot. 2-3 (citing Patricia M. Raisch Deposition (hereinafter, "Raisch Deposition" cited as "Raisch Depo.") 15:9-13, Pls. Ex. C)) Following the Transaction, the Plaintiffs allege that CRL kept Ameriquest's practices and procedures in place, including those for filing a proof of claim. (Pls. Mot. 6, 10-15

---

[8]Although the Amended Complaint sets forth additional fees, the Plaintiffs in subsequent pleadings, including the Plaintiffs' Motion, have limited their discussion to the post-petition, pre-confirmation Fees defined above. (*See* Amer. Mot. 5, n.2)

9

(citing Martin N. Lifshutz Deposition (hereinafter, "Lifshutz Deposition" cited as "Lifshutz Depo.") 65-66, Pls. Ex. D))

The Plaintiffs contend that when Ameriquest assigned its right to service certain loans, such as the Plaintiffs', CRL continued Ameriquest's alleged practice of assessing and collecting "millions of dollars" of undisclosed, unapproved fees. (Pls. Reply to CRL Resp. 3)  Because of the Transaction, Plaintiffs assert that CRL is liable to them under a theory of assignee liability. (*Id.* at 14-17) Further, Plaintiffs maintain CRL is liable to Plaintiffs because CRL received the undisclosed Fees Ameriquest wrongfully assessed when it took assignment of these Fees through the Transaction.  (*Id.* at 15)  The Plaintiffs further allege that CRL independently violated the automatic stay and filed at least 6,292 proof of claims in other bankruptcy cases.  (*Id.* at 13)

**B.      Ameriquest's Allegations**

In Ameriquest's Response to the Plaintiffs' Motion, Ameriquest does not dispute that:  it assessed the Fees to the Plaintiffs' account;  the Proof of Claim did not include these yet to be assessed Fees[9]; sent the Plaintiffs a payoff statement which detailed the Loan's balance; and the Plaintiffs paid off the balance reflected on the payoff statement with proceeds from the sale of the Property, following termination of the automatic stay.  (Amer. Resp. 2)  Ameriquest alleges that: they engaged in no act that would result in an automatic stay violation; the proceeds from the sale were not property of the Plaintiffs' bankruptcy estate; and the Plaintiffs are not entitled to punitive damages.  (Amer. Resp. 3, 5, 9)

---

[9]Ameriquest asserts that the disputed Fees did not arise until after Ameriquest filed its Proof of Claim on November 2, 2006.  Ameriquest never amended its Proof of Claim to include these Fees.

In its Brief in support of its Motion, Ameriquest reiterates the foregoing arguments and asserts that it was under no duty to disclose the disputed Fees. (Amer. Br. 14, 24, 26-33) In addition, Ameriquest argues the Plaintiffs are precluded from contesting the Fees under the doctrines of waiver, judicial estoppel and voluntary payment. (Amer. Br. 6) Ameriquest maintains the Plaintiffs knew of the Fees in January of 2007, when it filed the Motion for Relief.[10] (Amer. Reply 3) Ameriquest alleges no private right of action exists in the Bankruptcy Code pursuant to 11 U.S.C. §§ 502 and 506 and Bankruptcy Rules 2016 and 3001. (Amer. Br.17) Finally, Ameriquest argues the Plaintiffs' unjust enrichment claim is preempted by the Bankruptcy Code. (Amer. Br. 35)

## C.     CRL's Allegations

In response to the allegations in Plaintiffs' Motion, CRL sets forth that: at no time was it ever a creditor of the Plaintiffs; CRL was not in existence at the time the automatic stay was allegedly violated; and pursuant to the Plaintiffs' testimony, CRL had no involvement with the Loan and never assessed fees to the Plaintiffs' account. (CRL Resp. 3 (citing Jan Sandlin Depo. 109:2-17, 110:1-23, 111:1-17, 114:11-21, 116:15-23, 117: 1-14, CRL Ex. 2; James Sandlin Depo. 8:10-23, CRL Ex. 8)) As a result, the Plaintiffs have no grounds to charge CRL with violating the automatic stay. (CRL Resp. 3) The Plaintiffs admit they only dealt with Ameriquest during the life of the Loan. (CRL Resp. 4 (citing Jan Sandlin Depo.109:2-17, 110:1-23, 111:1-22, 114:11-21, CRL Ex. 2)) The Plaintiffs also admit that all of the allegations set forth in the Amended Complaint occurred prior to June of 2007, and thus prior to the

---

[10]These Fees were itemized in the Affidavit filed by Ameriquest in support of its Motion for Relief from Stay in Plaintiffs' bankruptcy case. (Proceeding No. 55)

11

incorporation of CRL.  (*Id.* (citing Jan Sandlin Depo. 116: 21-23, 117: 1, CRL Ex. 2))  Although
CRL acquired certain assets of Ameriquest and AMC, "it did not acquire either company," and
AMC is still in existence.  (CRL Resp.13 (citing Lifschutz Aff. ¶¶ 3, 5, CRL Ex. 1))
Additionally, despite the Plaintiffs' allegations to the contrary, CRL maintains that because the
Loan was paid in full, it did not acquire the servicing rights to the Loan.  (CRL Resp. 14 (citing
Lifschutz Aff. ¶ 3, CRL Ex. 1; Raisch Aff. ¶ 4, CRL Ex. 7))  Finally, CRL maintains that it
cannot be held liable as an assignee for any of Ameriquest's alleged wrongful acts against the
Plaintiffs because the Transaction Agreement explicitly excluded from CRL's acquisition any
liability of Ameriquest that would "constitute a tort or violation of requirement of any law[.]"
(CRL Resp. 16-18 (citing Pls. Ex. 5, p. 18))

 In addition to the CRL Response, CRL filed its own Motion for Summary Judgment.
(A.P. Proceeding No. 144) regarding the Amended Complaint's Allegations.  CRL sets forth the
following in its Motion:  CRL was not and is not the Plaintiffs' creditor and did not violate the
stay, either willfully or otherwise; CRL cannot be held liable for contempt, because no private
right of action exists, and there is no evidence that CRL violated a court order; the unjust
enrichment claim is preempted by the Bankruptcy Code and fails because CRL has not charged
and does not have any fees or money belonging to the Plaintiffs; and CRL did not file a proof of
claim in the Plaintiffs' bankruptcy case and did not violate the Bankruptcy Rules.  (CRL Mot. 11-
15, 21)  In the Motion, CRL does explain that although they did not service the Loan due to its
being paid in full, it came to CRL's attention during an account reconciliation that the Plaintiffs'
account had a $96.50 credit.  (CRL Mot. 18 (citing Raisch Aff. ¶¶ 4-7, CRL Ex. 6))  This credit
was for vendor services that Ameriquest ordered prior to the Transaction.  (*Id.* (citing Raisch Aff.

¶¶ 5-6, CRL Ex. 6)) On December 17, 2007[11], CRL wrote a check for $96.50 to the Plaintiffs, and it was cashed by the Plaintiffs. (*Id.* (citing Raisch Aff. ¶ 6, CRL Ex. 6))

In the CRL Motion, CRL also alleges: the Plaintiffs lack standing to bring the claims against them; the Plaintiffs cannot prove any injury caused by CRL; and the Plaintiffs are not suitable representatives for a class action. (CRL Mot. 22, 24, 26)

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which is applicable to bankruptcy cases pursuant to Bankruptcy Rule 7056, is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "'In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(quoting *Hayes v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1999)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)(quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

---

[11]The face of the check says December 17, 2007, but the Raisch Affidavit says the check was sent December 12, 2007. (Raisch Aff. ¶ 6, CRL Ex. 6)

13

### III.  CONCLUSIONS OF LAW

**A.      CRL's  Motion for Summary Judgment**

Generally, Plaintiffs' Amended Complaint asserts that CRL is liable to Plaintiffs for (1) Ameriquest's allegedly wrongful pre-Transaction conduct and (2) CRL's independent violations of the Bankruptcy Code.[12]

CRL was not incorporated until June 24, 2007 and did not acquire the servicing rights previously held by Ameriquest which are relevant to this case until September 1, 2007.  In support of its Motion, CRL filed the affidavits of Patricia Raisch and Martin Lifschutz, Financial Shared Services and Vendor Manager, Default Management - Special Servicing Division, for CRL and former President of CRL, respectively.  These affidavits represent that the servicing rights acquired by CRL allowed CRL to receive payments from mortgagees with unpaid loan balances and those rights did not include the right to receive payments from Plaintiffs since Plaintiffs' mortgage loan balance had already been paid in full.  No evidence has been presented to show that CRL ever assessed or collected any fees from Plaintiffs.[13]

It appears to the Court that CRL was not in existence when the disputed Fees were assessed by Ameriquest.  Additionally, Ameriquest collected the disputed Fees prior to CRL's acquisition of the servicing rights from Ameriquest.  There is no evidence that Plaintiffs suffered

---

[12]Plaintiffs have asserted that they are entitled to relief on a class basis but no class has been certified.  For purposes of this Opinion, the Court will only address the Fees Plaintiffs contend were illegally assessed to, and ultimately collected from, them by Ameriquest and CRL.

[13]CRL did have minimal interaction with Plaintiffs, but this interaction was limited to the refunding of $96.50 to Plaintiffs after CRL determined through an account review that a $96.50 credit related to vendor services ordered by Ameriquest prior to the effective transfer date of the servicing rights was owed to Plaintiffs.  *See* CRL Ex. 7 ¶¶ 8-9.

14

any injury arising out of CRL's purported continuation of Ameriquest's alleged practices and

procedures.

Section 2.2(b)(i)(z) of the Transaction Agreement provides as follows:

> Notwithstanding anything to the contrary contained in this
> Agreement, the Buyer shall not assume or be obligated (and the
> Sellers and their Affiliates shall retain their respective obligations)
> to pay, perform or otherwise assume or discharge any Liabilities of
> the Sellers (except for the Assumed Liabilities)(the "Excluded
> Liabilities"), which Excluded Liabilities shall include the
> following:
>
> ***
>
> any Liability of any Seller or Affiliates thereof that constitutes,
> may constitute or is alleged to constitute a tort or violation of
> requirement of any Law (including any penalties or fines imposed
> or related thereto (whether civil or criminal)).

(Pls. Ex. 5, p. 18)  The Court finds this language is clear CRL will not be held liable for the

conduct or any other alleged violations of the Bankruptcy Code or Rules.  The general rule with

respect to assignee liability is that "unless there has been an express assumption of liability, the

assignee is not liable to the debtor for liabilities incurred by the assignor in connection with the

subject matter of the assignment."  6A C.J.S. *Assignments* § 117 at 512 (2004).  In this case,

since the language of the Transaction Agreement expressly excludes liability for the alleged

violations/non-compliance, CRL is not liable for Ameriquest's alleged violations/non-

compliance.

Plaintiffs failed to establish that CRL serviced Plaintiffs' loan, assessed any fees or

performed any other alleged wrongful actions asserted by Plaintiffs.  In fact, all such actions

occurred before CRL existed and based on the Transaction Agreement no liability was imposed

on CRL. CRL's Motion for Summary Judgment is due to be **GRANTED**.

**B.** **Plaintiffs' Motion for Partial Summary Judgment and Defendant Ameriquest's Motion for Summary Judgment -Violations of the Automatic Stay**

Plaintiffs filed a petition for bankruptcy relief under Chapter 13 on October 4, 2006, and their plan was confirmed on December 28, 2006. Between October 4, 2006 and December 28, 2006, Ameriquest recorded fees on the Plaintiffs' mortgage account, including attorneys' fees in the amount of $375.00 on November 8, 2006, and property inspection fees of $15.00 on November 16, 2006 and December 19, 2006, totaling $405.00 in post-petition, pre-confirmation Fees. These Fees, however, were only disclosed[14] to Plaintiffs and this Court in an affidavit filed in support of a motion for relief from stay after confirmation of Plaintiffs' bankruptcy plan.

Plaintiffs allege that Ameriquest violated the automatic stay by assessing and ultimately collecting the $405.00 in disputed post-petition, pre-confirmation Fees.[15] Plaintiffs contend that Ameriquest's assessment of the Fees in this case, which occurred post-petition, pre-confirmation, violated the automatic stay because these Fees were not properly disclosed and approved. As to

---

[14]The court finds the timing of the disclosures by Ameriquest interesting. These Fees were disclosed as part of the balance due (adding these Fees increased the balance or payoff) when Ameriquest sought relief from the stay. Yet Ameriquest argues that disclosure was not necessary or required when it filed its Proof of Claim, which would have enabled the Plaintiffs to fully cure their arrearage as part of the bankruptcy plan or to object to these Fees. It appears that Ameriquest disclosed the Fees when it was supportive of the relief they sought but did not disclose them when it would have been helpful to Plaintiffs.

[15]Plaintiffs concede that they may only dispute the $405.00 in post-petition, pre-confirmation Fees not disclosed on Ameriquest's Proof of Claim in view of the Eleventh Circuit's decision in *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333 (11th Cir. 2000). (Pls. Reply to Amer. Resp. 9) The Court agrees with this conclusion; therefore, the Court will only address the $405.00 in disputed post-petition, pre-confirmation Fees assessed to Plaintiffs ' account.

Case 08-00191-TOM    Doc 177    Filed 04/08/10    Entered 04/08/10 15:06:49    Desc Main
Document    Page 16 of 44

Plaintiffs' collection argument, Plaintiffs contend that Ameriquest violated the automatic stay by applying Trustee payments in the amount of $161.16 to the disputed Fees instead of to the pre-petition arrears to be satisfied pursuant to Plaintiffs' confirmed bankruptcy plan[16], and by collecting proceeds from the sale of Plaintiffs' residence to satisfy the Plaintiffs' mortgage balance, which included the disputed Fees.  Plaintiffs allege that these actions amounted to violations of §§ 362(a)(3), (a)(5) and (a)(6).

### 1.      Alleged Violations of § 362(a)(3)

11 U.S.C. § 362(a)(3) operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Plaintiffs argue that Ameriquest violated § 362(a)(3) by (a) assessing the disputed Fees and (b) ultimately collecting these Fees through the misapplication of Trustee payments and the receipt of proceeds from the sale of Plaintiffs' home.

### (a)      Assessment of the Disputed Fees

Plaintiffs rely on the statutory language of § 362(a)(3), and they cite:  *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 366 B.R. 584, 600 (Bankr. E.D. La. 2007)("failure to disclose other fees or request permission of the Court to seek their payment from estate property resulted in an illegal collection of fees not due from estate property and violated the automatic stay"); *Jung Bea Han v. GE Capital Small Bus. Fin. Corp. (In re Jung Bea Han)*, 333 B.R. 881 (Bankr. N.D. Fla. 2005)(creditor violated the automatic stay by charging interest at a higher rate

---

[16]*See* Pls. Resp. to Amer. Br. 21 (citing Gibson Aff. ¶ 16, Amer. Ex. D).  Though this argument was not asserted in Plaintiffs' Motion, the Court will address this argument under this section of the Opinion.

than allowed under the note during the post-petition, pre-confirmation time period); *Campbell v. Countrywide Home Loans, Inc. (In re Campbell)*, 361 B.R. 831 (Bankr. S.D. Tex. 2007)(creditor violated the automatic stay when it increased debtors' mortgage payment post-petition to satisfy a pre-petition tax obligation); *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298 (5th Cir. 2005)(violation of the automatic stay occurred when creditor foreclosed on debtor's property); and *Harris v. First Union Mortgage Corp. (In re Harris)*, 280 B.R. 724, 728 (Bankr. S.D. Ala. 2001)(posting of undisclosed, unapproved post-petition, pre-confirmation fee to debtor's account may violate the automatic stay).

Ameriquest asserts that the assessment of the disputed Fees did not amount to an "act to obtain possession of property of the estate" as is required for a violation of § 362(a)(3). Ameriquest cites *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 4 (1st Cir. 2003) (unilaterally recording amounts due but not communicating them to the debtor, other creditors, the bankruptcy court, or any third party, did not constitute a violation of the automatic stay); *Saylor v. Select Portfolio Servicing, Inc. (In re Saylor)*, No. 3:07-CV-229, 2008 WL 2397344, at *4 (M.D. Ala. June 9, 2008)(citing *Mann*, *supra.*); *Padilla v. Wells Fargo Home Mortgage Corp. (In re Padilla)*, 379 B.R. 643, 664 (Bankr. S.D. Tex. 2007)(citing *Mann*, *supra.*) to argue that the mere assessment - the mere notation - of fees does not equate to the "act" required for a §362(a)(3) stay violation. Additionally, Ameriquest argues that its position is bolstered by the fact that four of the decisions cited by Plaintiffs finds a violation of § 362(a)(3) where there is an assessment of fees plus some other act to collect them.[17]   Thus, Ameriquest asserts that the mere

---

[17]Ameriquest notes that the foreclosure in *In re Chesnut*, Wells Fargo's payment of fees to itself out of estate property in *In re Jones*, the payments made to the creditor from debtor's assets that exceeded the note rate in *In re Jung Bea Han*, and the increase in debtor's mortgage

assessment of the disputed Fees in this case did not amount to a violation of § 362(a)(3).

This Court interprets § 362(a)(3) as requiring affirmative action to take possession of something.  Simply performing a clerical function,post-petition, like posting a charge or expense is not a stay violation.

**(b)     Collection of the Disputed Fees**

As noted above, Plaintiffs assert that Ameriquest's alleged misapplication of Trustee payments and receipt of proceeds from the sale of Plaintiffs' home amounted to violations of § 362(a)(3).

The language of § 362(a)(3) makes it clear that some act to possess or collect property of the estate is necessary for a § 362(a)(3) stay violation.  The Court finds that Ameriquest received the Trustee payments pursuant to the Confirmation Order and thus was lawfully in possession of these payments at the time it allegedly misapplied them.  Ameriquest did not engage in any act to possess or collect these payments as it received them as part of the Chapter 13 process.  Receipt of payments from a Chapter 13 Trustee is not an act included in or envisioned by § 362(a)(3).

As to the sale proceeds, the stay had lifted and the Plaintiffs concede that the stay had lifted.  They argue, however, that the stay lifted for the sole purpose of allowing Ameriquest to pursue the *in rem* remedy of foreclosure since foreclosure was the only remedy sought in Ameriquest's Motion for Relief[18], and that any act by Ameriquest to collect the disputed Fees outside of foreclosure violated the automatic stay.

_____

payments post-petition to recoup pre-petition property tax obligation in *In re Campbell* amount to actions beyond the mere assessment of fees.  *See* Amer. Resp. 4.

[18]*See* Pls. Reply to Amer. Resp. 4-6.

19

The Eleventh Circuit described the effect of the stay lifting in *Hope v. Gen. Fin. Corp. of Ga. (In re Kahihikolo)*:

> [a]n order which lifts the automatic stay "returns the parties to the legal relationships that existed before the stay became operative. Whatever non-bankruptcy law governed the transactions and relationships of the parties prior to the application of the Bankruptcy Code is the law which controls the conduct of the parties once the stay is lifted."

807 F.2d 1540, 1542 (11th Cir. 1987)(quoting *Fid. Nat'l Bank v. Winslow (In re Winslow)*, 39 B.R. 869, 871 (Bankr. N.D. Ga. 1984)).

Ameriquest's Motion for Relief may have only sought relief from the stay in order to pursue the foreclosure, however, this Court's Order lifted the stay without any limitations. Further, the Court is unwilling to accept Plaintiffs' assertion that Ameriquest's only permissible act was to foreclose. Had Ameriquest done so, Plaintiffs would not have been able to close the sale of the home. There was not a stay violation resulting from Ameriquest's conduct in holding off on a foreclosure to allow a private sale[19] by Plaintiffs which provided funds so Ameriquest and HUD (other mortgage holder) could be paid. The Court finds that the "act" (receipt of sale proceeds on or about July 2, 2007) complained of occurred after Ameriquest had successfully obtained relief from the automatic stay and therefore this "act" did not amount to a violation of § 362(a)(3).

**2.      Alleged Violation of § 362(a)(5)**

11 U.S.C. § 362(a)(5) operates to stay "any act to create, perfect, or enforce against

---

[19]In Plaintiffs' Motion to Sell (Proceeding No. 51, ¶ 4), Plaintiffs asserted that "Debtors desire the proceeds from the home to be paid directly from the buyer to AMC Mortgage Services with the balance to be placed in their Chapter 13 Plan."

20

property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(5). Plaintiffs argue that Ameriquest violated § 362(a)(5) through the assessment and ultimate collection of the undisclosed, unapproved Fees in this case and cite to the language of Paragraph 9 of their Mortgage, which provides as follows:

> 9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreement contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over the Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest,

Case 08-00191-TOM    Doc 177    Filed 04/08/10    Entered 04/08/10 15:06:49    Desc Main
Document    Page 21 of 44

upon notice from Lender to Borrower requesting payment.[20]

Plaintiffs argue that Ameriquest's assessment of the $405.00 in undisclosed, unapproved Fees amounted to the creation of a lien against a debtor in violation of the automatic stay.  Plaintiffs also contend that Ameriquest's collection of these disputed Fees when it received proceeds from the sale of the Plaintiffs' residence amounted to the enforcement of a lien against a debtor in violation of the automatic stay.

**(a)      Assessment of the Disputed Fees (Creation of a Lien)**

The language found in Paragraph 9 of Plaintiffs' Mortgage indicates that fees such as the disputed Fees in this case will become additional debt secured by the Mortgage.  This Court concludes that the assessment of the disputed Fees did not amount to the creation of a new or different lien; rather, the assessment of the disputed Fees amounted to an enlarged lien.

**(b)      Collection of the Disputed Fees (Enforcement of a Lien)**

Plaintiffs contend that Ameriquest's collection of the disputed Fees through the receipt of proceeds from the sale of the Plaintiffs' home amounted to the enforcement of a lien in violation of § 362(a)(5).  As previously noted, however, Ameriquest was no longer subject to the automatic stay when it collected these proceeds, so there could not have been any stay violation upon Ameriquest's collection of proceeds from the sale of the Plaintiffs' home.

Thus, Ameriquest did not violate § 362(a)(5).

**3.      Alleged Violations of § 362(a)(6)**

---

[20]*See* Amer. Ex. A, p. 7; Reply to Amer. Resp. 10-11.  The Court notes that Ameriquest's Exhibit A failed to provide a portion of Section 9.  The missing portion was supplied by Plaintiffs in Exhibit C of Plaintiffs' Complaint.  (adv. proc. doc. no. 1, Ex. C)

22

Plaintiffs contend that Ameriquest violated § 362(a)(6) by assessing and ultimately collecting the disputed Fees in this matter. 11 U.S.C. § 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

The disputed Fees arose post-petition and are therefore post-petition and not pre-petition claims. Thus, the assessment and ultimate collection of these Fees did not amount to a violation of § 362(a)(6).

### 4.      Conclusion - Violations of the Automatic Stay

The Court concludes that Ameriquest took no action that violated the automatic stay and Plaintiffs' Motion for Partial Summary Judgment is due to be **DENIED** and Defendant Ameriquest's Motion for Summary Judgment is due to be **GRANTED** on Count One.

### C.      Ameriquest's Motion for Summary Judgment[21]

Plaintiffs assert that Ameriquest is liable for contempt (Count Two), unjust enrichment/disgorgement (Count Three) and violations of Rules 2016 and 3001 of the Federal Rules of Bankruptcy Procedure (Count Four). Count Five of Plaintiffs' Amended Complaint asserts an objection to claim.[22] In its Motion for Summary Judgment, Ameriquest asserts that each of these remaining claims is due to be dismissed.

### 1.      Waiver, Judicial Estoppel, Voluntary Payment/Preemption, and Lack of Private Right of Action

---

[21]Ameriquest's Motion for Summary Judgment arguments regarding the alleged stay violations (Count I of Amended Complaint) were addressed under Section B.

[22]Beyond Plaintiffs' claim of unjust enrichment/disgorgement, the remaining claims are what this Court views as the non-disclosure of fees causes.

23

**(a)      Waiver**

Ameriquest asserts that Plaintiffs have waived their right to contest Ameriquest's conduct in assessing and ultimately collecting the disputed Fees.  Waiver is established by showing "(1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit."  *Dooley v. Weil (In re Garfinkle)*, 672 F.2d 1340, 1347 (11th Cir. 1982).  In *Weisbart & Co. v. First Nat'l Bank of Dalhart*, the Fifth Circuit Court of Appeals noted that

> [i]ntention is a prime factor in determining the question of waiver. The acts, words or conduct relied upon to establish intention must be such as to manifest an unequivocal intention to no longer assert the right.  Waiver by implication will be applied only to prevent fraud or inequitable consequences.

568 F.2d 391, 396 (5th Cir. 1978)(quoting *Athens Comm'n Co. v. Lufkin Livestock Exch., Inc.*, 439 S.W.2d 427, 430 (Tex.Civ.App. Beaumont, 1969, writ ref'd n.r.e.)).

Based on *Garfinkle*, Ameriquest argues that the Plaintiffs' course of conduct evidences an intention to relinquish any right to challenge the post-petition Fees because they

> manifested their intention to waive any right related to the post-petition charges by [1] failing to object when presented with the charges in January 2007; [2] proceeding with the closing after receiving the Ameriquest payoff statement; [3]objecting to Ameriquest's claim after the sale but failing to raise any dispute as to the post-petition fees; and [4] remaining silent as to their objection, thereby leading Ameriquest and the Bankruptcy Court to proceed based on the Sandlins' implied assent.

(*See* Amer. Mot. 6-7)

According to Ameriquest, this course of conduct mimics the course of conduct that

produced a finding of waiver in the case of *In re Westbrook*, 246 B.R. 412 (Bankr. N.D. Ala. 1999). In *Westbrook*, the debtor's plan specifically provided that the debtor would not be required to pay interest on GMAC's secured claim. This plan was confirmed without objection from GMAC, and GMAC accepted payments from the trustee pursuant to the terms of this confirmed plan for nearly 30 months. Subsequently, GMAC filed an amended claim which sought payment for interest. Judge Cohen, however, found that GMAC had waived its right to seek interest payments from the debtor due to the express language of the confirmed plan and GMAC's receipt of payments pursuant to the terms of the confirmed plan without objection for the first 30 months of the debtor's plan. According to Judge Cohen, "[these] actions cumulatively demonstrate[d] an intent to waive the debtor's obligation to pay interest under section 1325(a)(5)." *In re Westbrook*, 246 B.R. at 419.

This case is distinguishable from *Westbrook* because Plaintiffs allege that they were not fully aware of the disputed Fees until after the sale of their home in July 2007.[23] If Plaintiffs were unaware of these Fees they could not have had an intention to waive their claims or causes of action. The Court finds that there is a genuine issue of material fact as to whether Plaintiffs knew about these charges and whether they waived their rights and "manifested an unequivocal

---

[23]In her deposition, Jan Sandlin testified that, at the time of closing, she did not understand why the fees on the payoff statement were so high. (Jan Sandlin Depo. 74:16-17, Amer. Ex. B) Ameriquest contends that this evidence is detrimental to Plaintiffs because it shows that they still proceeded with the sale of the home after calling into question the amount of the fees, but the Court does not agree with this conclusion in view of Jan Sandlin's other testimony (*See* Jan Sandlin Depo. 74: 18-23; 75: 1-2), which indicates that Plaintiffs proceeded with the sale in reliance upon the closing attorney's representation to them that the amount listed on the payoff statement would have to be paid because it was correct. If true, this evidence indicates that Plaintiffs were, at the time of the closing, unaware of any potential impropriety of the Fees now in dispute.

intention to no longer assert" their rights to contest the disputed Fees.

**(b)    Judicial Estoppel**

Ameriquest asserts that Plaintiffs are judicially estopped from contesting the disputed

Fees now because (1) they previously "repeatedly acquiesced to Ameriquest's pre-petition claim

*and* calculation of the outstanding post-petition obligation," and (2) the Plaintiffs' changing of

positions with respect to these Fees was clearly motivated by "the exigencies of the moment,"

which insults "the integrity of the judicial process." (*See* Amer. Br. 10-11.)

Ameriquest argues that Plaintiffs received notice of the now disputed Fees in January

2007 because they were included in the Krueger Affidavit. Ameriquest also asserts that Plaintiffs

did not object to these Fees at the hearing on Plaintiffs' objection to claim. Ameriquest argues

that these actions show Plaintiffs repeatedly acquiesced to the payoff amount, which included the

$405.00 in now disputed Fees, and that the Court relied on Plaintiffs' position with respect to

these Fees.

Next, Ameriquest argues that Plaintiffs' inconsistent positions with respect to the

disputed Fees in the present matter were an effort to "have their cake and eat it, too."

Ameriquest argues that Plaintiffs' acquiescence with respect to the now disputed Fees allowed

them to avoid foreclosure and to have their mortgage paid in full, while their current position in

this adversary proceeding seeks damages from Ameriquest for the assessment and ultimate

collection of these same Fees. "This variety of purposeful manipulation exemplifies the very

rationale behind the doctrine of judicial estoppel." (*See* Amer. Br. 12.) Ameriquest asserts that

Plaintiffs ought to be judicially estopped from asserting this inconsistent position with respect to

the disputed Fees.

In *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (U.S. 2001), the United States Supreme Court used three factors to determine if judicial estoppel is applicable: (1) "a party's later position must be 'clearly inconsistent with its earlier position;'"[24] (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled;'"[25] and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."[26] *Id.* Eleventh Circuit cases focus on two factors when determining the applicability of judicial estoppel: (1) "a party's allegedly inconsistent positions . . . 'made under oath in a prior proceeding;'" and (2) the "'inconsistencies must be shown to have been calculated to make a mockery of the judicial system.'" *Barger v. City of Cartersville*, 348 F.3d 1289, 1294 (11th Cir. 2003)(quoting *Salomon Smith Barney, Inc. v. Harvey*, 260 F.3d 1302, 1308 (11th Cir. 2001)).

Plaintiffs' objection to claim was only a pleading, mere allegations. No sworn testimony was presented or taken. Because Ameriquest voluntarily withdrew its claim, this Court simply mooted any objection Plaintiffs may have had with respect to Ameriquest's Proof of Claim. The Court relied on Ameriquest's conduct, not Plaintiffs', in making this ruling. Thus, Plaintiffs did

_____

[24]Citing *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999); *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999); *Hossaini v. Western Mo. Medical Center*, 140 F.3d 1140, 1143 (8th Cir. 1997); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997).

[25]Citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982).

[26]Citing *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S.Ct. 555 (1895); *Philadelphia, W. & B.R. Co. v. Howard*, 13 How. 307, 335-37, 14 L.Ed. 157 (1851); *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3d Cir. 1953).

not succeed "in persuading [this Court] to accept [its] earlier position." *New Hampshire*, 532 U.S. at 750. The Supreme Court's decision in *New Hampshire* notes that a Plaintiff's success in obtaining the Court's prior approval of its previous position is a particularly important ingredient for judicial estoppel. Further, there was no position taken by Plaintiffs "under oath" as required by the *Barger* case. In this case, the Court neither approved nor disapproved the Plaintiffs' position and thus this Court is unwilling to conclude that Plaintiffs are judicially estopped from asserting their allegations in the Amended Complaint with respect to the $405.00 in disputed Fees.

Even though the Court has determined that judicial estoppel is not applicable in this case, the Plaintiffs do not have a valid objection to claim. Ameriquest withdrew its claim without objection by the Plaintiffs. Further, the main case in which that claim was filed and then withdrawn has been dismissed. Since that claim no longer exists, there can be no valid cause of action by the Plaintiffs as to that claim. Thus, any allegations in the Complaint in Count Five that purport to object to that claim are due to be rendered moot.

**(c)      Voluntary Payment/Preemption[27]**

---

[27]Plaintiffs contend that Ameriquest waived the defense of unjust enrichment because it was not raised in Ameriquest's Answer or Amended Answer. Of course, Ameriquest would not raise unjust enrichment as an affirmative defense to unjust enrichment. Ameriquest does, however, raise the defenses of voluntary payment and preemption. Even if neither of these defenses had been asserted in Ameriquest's Answer or Amended Answer, such omissions would not necessarily be fatal as the Eleventh Circuit held in its decision in the case of *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988)(quoting *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. Unit B 1981), that the "'[f]ailure to affirmatively plead [Rule 8(c) affirmative defenses] is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise.'" Because there is no claim of surprise in the present matter, the Court finds that Ameriquest has not waived either defense.

Though not asserted, the Court finds that Plaintiffs' unjust enrichment claim is precluded by Alabama law, which provides that "[r]ecovery on a theory of unjust enrichment ... is only available 'when as a matter of fact there is no legal contract.'" *Sharpe v. Wells Fargo Home Mortgage (In re Sharpe)*, 391 B.R. 117, 169 (Bankr. N.D. Ala. 2008)(quoting *Reg'l Pacesetters, Inc. v. Halpern Enters., Inc.*, 165 Ga. App. 777, 300 S.E.2d 180, 185 (1983); *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir. 1998)). Because Plaintiffs' Loan is a legal contract between Plaintiffs and Ameriquest, Plaintiffs' unjust enrichment claim fails under Alabama law.

### (d) There Is No Private Right of Action Under 11 U.S.C. § 502, 11 U.S.C. § 506, Rule 2016 of the Federal Rules of Bankruptcy Procedure or Rule 3001 of the Federal Rules of Bankruptcy Procedure

Ameriquest argues that Congress clearly did not provide private causes of action to remedy violations of these sections of the Bankruptcy Code or Bankruptcy Rules. Had Congress intended to do so, according to Ameriquest, Congress would have expressly so provided for such causes of action as it did in § 362(k) of the Bankruptcy Code. Ameriquest contends that any argument to the contrary renders Congress' specific provision of a private right of action under § 362(k) superfluous. Further, Ameriquest cites to two decisions which have held that no private right of action for violations of sections 502 and 506 can be implied.[28] Additionally, Ameriquest cites to a number of decisions which have held that § 105(a) does not work to create a private

---

[28]*See Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 505-06 (Bankr. N.D. Ill. 1998); *Myles v. Wells Fargo Home Bank, N.A. (In re Myles)*, 395 B.R. 599, 607-09 (Bankr. M.D. La. 2008).

29

right of action to remedy violations of other sections of the Bankruptcy Code.[29]  As to Bankruptcy

Rules 2016 and 3001, Ameriquest argues that case law clearly provides that debtors may not

recover damages for violations of these Rules.[30]  Further, Ameriquest asserts that the Federal

Rules of Bankruptcy Procedure were designed to supplement, not replace, the Bankruptcy Code

and cannot function to "override the clear language of the Bankruptcy Code" by providing private

rights of action for violations of these Rules.  *In re Dove-Nation*, 318 B.R. at 151.

Section 105 of the Bankruptcy Code allows a court to fashion appropriate remedies and

judgments for violations thereof.  Section 105(a) provides, in pertinent part, that

> [t]he court may issue any order, process or judgment that is
> necessary or appropriate to carry out the provisions of this title.  No
> provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, *sua
> sponte*, taking any action or making any determination necessary or
> appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a).  In the case of *Marrama v. Citizens Bank of Mass.*, the Supreme Court of the

United States found that bankruptcy courts have "broad authority . . . to take any action that is

necessary or appropriate 'to prevent an abuse of process.'" 549 U.S. 365, 375, 127 S.Ct. 1105,

166 L.Ed.2d 956 (2007)(quoting 11 U.S.C. § 105(a)).  Relying on this "broad authority," the

Bankruptcy Court for the Western District of North Carolina held that

---

[29]*See French v. Am. Gen. Fin. Svcs. (In re French)*, No. 08-3166, 2009 WL 489609, at
*13 (Bankr. E.D. Tenn. Feb. 13, 2009); *In re Newton*, No. 08-1106, 2009 WL 277437 (Bankr.
M.D. Ala. Jan. 29, 2009); *Myles*, 395 B.R. at 608; *Rogers v. B-Real, L.L.C.  (In re Rogers)*, 391
B.R. 317, 323 (Bankr. M.D. La. 2008).

[30]*See Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation)*, 318 B.R. 147, 151
(B.A.P. 8th Cir. 2004); *In re Rogers*, 391 B.R. at 323; *Yancey v. Citifinancial, Inc. (In re
Yancey)*, 301 B.R. 861, 868 (Bankr. W.D. Tenn. 2003).

30

> [w]ithout determining the existence of an express or implied cause
> of action, the Court recognizes that § 506(b) and Rule 2016 create
> rights *and* duties for creditors in bankruptcy cases.  A creditor may
> be entitled to payment of professional fees under its contract with a
> debtor, but before those funds will be paid from the bankruptcy
> estate, the creditor must affirmatively demonstrate their
> reasonableness to the court after notice.  If a creditor elects to
> ignore the law to obtain such fees, it is well within the Court's
> authority under § 105 to rectify that error."

*Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 668 (Bankr. W.D.N.C. 2000);

*see also In re Slick*, Case No. 98-14378, Adv. No. 99-1136, 2002 Bankr. LEXIS 772, *25-26

(Bankr. S.D. Ala. 2002 May 10, 2002)("Section 105 authorizes a court to issue any order,

process, or judgment that is necessary . . . to carry out the provisions of this title.  No provision of

this title providing for the raising of an issue by a party in interest shall be construed to preclude

the court from, sua sponte, taking any action or making any determination necessary or

appropriate to enforce or implement court orders or rules, or to prevent an abuse of process").

The Court agrees with this position and finds that it is well within its statutory authority to

fashion appropriate remedies for violations of the Bankruptcy Code and Rules.[31]

### 2.    Plaintiffs' Non-Disclosure of Fees Causes[32]

Count Two of Plaintiffs' Amended Complaint asserts that Ameriquest is liable for

"contempt" for willful and intentional violations of §§ 105, 362, 502 and 506 of the Bankruptcy

---

[31]This finding is consistent with this Court's  former holding in *In re WAPI, Inc.*, 171
B.R. 130, 133 (Bankr. N.D. Ala. 1994)(quoting *U.S. v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.
1986) ), that "§ 105 does not necessarily 'constitute a roving commission to do equity'" because
the Court is using § 105 to enforce the provisions of the Bankruptcy Code and Bankruptcy Rules.

[32]As previously mentioned by the Court, the remaining claims in Plaintiffs's Amended
Complaint are what this Court considers the non-disclosure of fees causes.  Plaintiffs' Count
Two encompasses all of these remaining claims.

Code, as well as willful and intentional violations of Rule 2016 of the Bankruptcy Rules for

"assessing post-petition fees and expenses . . . without any prior notice or Court approval."  (*See*

Am. Compl. 6-7)  Plaintiffs' assertions in this Count[33] are that Ameriquest had a duty under §

506(b) and Rule 2016 to disclose the disputed Fees and because Ameriquest failed to disclose

them, the Court should use its § 105 powers to award Plaintiffs actual, compensatory and

punitive damages, as well as fees and costs.

> **(a)**      **Plaintiffs' Arguments**

Plaintiffs first cite to the case of *Jones v. Wells Fargo Home Mortgage (In re Jones)*, 366

B.R. 584, 594 (Bankr. E.D. La. 2007)(citing Fed. R. Bankr. P. 2016(a); *In re Hudson*

*Shipbuilders, Inc.*, 794 F.2d 1051 (5th Cir. 1986); *In re Allen*, 215 B.R. 503 (Bankr. W.D. Tex.

1997); *In re Tate*, 253 B.R. 653, 665 (Bankr. W.D.N.C. 2000); *In re Gifford*, 256 B.R. 661

(Bankr. D.Conn. 2000)), in which Judge Magner found that

> fees incurred postpetition and prior to confirmation must be
> approved by the Court as reasonable under § 506(b) and
> Bankruptcy Rule 2016(a).  Preconfirmation, postpetition fees are
> proven by application.  Bankruptcy Rule 2016(a) mandates that "an
> entity seeking compensation for services or reimbursement for
> expenses shall file an application setting forth a detailed statement
> of (1) the services rendered, time expended and expenses incurred,
> and (2) the amounts requested."

Judge Magner concluded by finding that

> [c]reditors should not be able to assess fees to the account of a
> person in bankruptcy without the person's knowledge.  A
> bankruptcy case's purpose is to allow a debtor to get out of
> financial trouble.  At discharge, a debtor ought to be able to expect
> he or she has brought his or her secured debts current and wiped

---

[33]No further discussion regarding stay violations or § 362 is necessary, having been
disposed of already in this Opinion.

> out all unsecured debts not paid through a plan. Undisclosed fees
> prevent a debtor from paying the fees in his or her plan - an option
> that should not be lost simply because a creditor chooses to not list
> the fee and expects to collect it later

*In re Jones*, 366 B.R. at 596 (citing *Harris v. First Union Mortgage Corp. (In re Harris)*, Case

Nos. 96-14029, 00-11321, Adv. No. 99-1144 at *5 (Bankr. S.D. Ala. May 10, 2002)(Text

available at <www.alsb.uscourts.gov>)).

Plaintiffs also cite to the cases of *In re Madison*, 337 B.R. 99 (Bankr. N.D. Miss. 2006);

*Noletto v. NationsBanc Mortgage Corp. (In re Noletto)*, 281 B.R. 36 (Bankr. S.D. Ala. 2000) and

*Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289 (Bankr. S.D. Tex. 2007) for

support. In *In re Madison*, Judge Houston held that "while the debtors' bankruptcy cases are still

pending, no additional fees should be charged to or collected from the debtors without the

specific approval of the court." 337 B.R. at 104. This approach, according to Judge Houston,

> prevents unsuspecting debtors from being "blind sided" by the
> addition of undisclosed charges, in most instances to secured
> claims, during the time that the plan is being administered and
> before the debtors receive their Chapter 13 discharges. Depending
> on the particular factual events, fees can be added when justified to
> a creditor's claim during an ongoing case, but they must be
> properly disclosed and approved by the court.

*Id.* In *In re Noletto*, Judge Mahoney found that "[f]ees which are not disclosed at all, fees which

are not disclosed with specificity, or are not included in the arrearage claim to be paid through

the plan if the plan so provides, are per se unreasonable because they are improperly charged. A

postpetition/preconfirmation fee is not owed until properly claimed." 281 B.R. at 47.

In *In re Sanchez*, a case in which the facts were nearly identical to those in this case,

Judge Bohm held that "oversecured creditors may assess post-petition, pre-confirmation charges

33

pursuant to § 506(b);" however, "any charges assessed pursuant to § 506(b) must be reasonable and provided for in the agreement under which the claim arose." 372 B.R. at 303 (citing 11 U.S.C. § 506(b); *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)). Judge Bohm found that Rule 2016 serves to carry out the process of determining whether fees and charges are indeed reasonable under § 506(b) by requiring an application setting forth "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." *Id.* at 303-04 (quoting Fed. R. Bankr. P. 2016(a)). If an oversecured creditor fails to disclose post-petition pre-confirmation fees and charges pursuant to § 506(b) and Rule 2016, then it is impossible for the Court to determine whether such fees and charges are reasonable under 506(b). The failure to disclose such fees and charges pursuant to § 506(b) and Rule 2016 renders these fees and charges per se unreasonable.[34] *Id.* at 305

Judge Bohm then addressed the interplay between § 1322(b)(2) and § 506(b) and Rule 2016. Section 1322(b)(2) does provide that the rights of a creditor whose claim is secured only by a lien on the debtor's property may not be modified by a debtor's plan. This type of creditor may certainly pursue repayment of those fees and charges that are provided for in the underlying contract during the bankruptcy plan; however, § 1322(b)(2) does not provide "carte blanche" to pursue any method for repayment of these fees and/or charges/ expenses. *Id.* Instead, such a

_____

[34]Plaintiffs also cite to the following cases for support of this proposition: *Payne v. Mortgage Elec. Registration Sys., Inc. (In re Payne)*, 387 B.R. 614 (Bankr. D. Kan. 2008); *In re Watson*, 384 B.R. 697 (Bankr. D. Del. 2008); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436, 458-59 (Bankr. S.D. Tex. 2008); *In re Hight*, 393 B.R. 484 (Bankr. S.D. Tex. 2008); *In re Bossart*, No. 05-34015, Adv. No. 06-03540, 2007 WL 4561300 at *10 (Bankr. S.D. Tex. Dec. 21, 2007); *In re Harris*, 280 B.R. 724 (Bankr. S.D. Ala. 2001) *In re Gifford*, 256 B.R. 661 (Bankr. D. Conn. 2000); *In re Tate*, 253 B.R. 653 (Bankr. W.D.N.C. 2000); *In re Allen*, 215 B.R. 503 (Bankr. W.D. Tex. 1997).

34

creditor may pursue repayment of these fees and charges if, and only if, it complies with the requirements of § 506(b) and Rule 2016. Judge Bohm relied on the well established principle that when two or more "'statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" *Id.* at 306 (quoting *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974)). Since § 506(b) and Rule 2016 do not prohibit an eligible creditor from receiving fees and charges to which it is entitled under § 1322(b)(2), and because there is no "clearly expressed congressional intention to the contrary," these statutes are indeed "capable of co-existence." *Id.* The Bankruptcy Code requires a creditor with rights to pursue post-petition, pre-confirmation fees and charges under § 1322(b)(2) to comply with the disclosure obligations of § 506(b) and Rule 2016 when attempting to recover these fees and charges. *Id.*

In this case, Plaintiffs contend that each of the disputed Fees was assessed post-petition, pre-confirmation and therefore § 506(b) was applicable and these Fees should have been disclosed when charged or assessed. Plaintiffs assert that even though these Fees were allowed by the mortgage contract, Ameriquest did not have "carte blanche" under § 1322(b)(2) to assess these Fees without disclosing them.[35]

**(b)     Ameriquest's Arguments**

Ameriquest asserts the following arguments in support of its position that it had no duty to disclose the disputed Fees: (1) the Plaintiffs' confirmed plan does not require disclosure or notice of the disputed Fees in the present matter; (2) the Bankruptcy Code does not impose a duty

---

[35]Neither Ameriquest nor Plaintiffs have challenged whether Ameriquest was an oversecured creditor that could take advantage of § 506(b) since the Plaintiffs have failed to suggest otherwise.

Case 08-00191-TOM     Doc 177     Filed 04/08/10     Entered 04/08/10 15:06:49     Desc Main
Document      Page 35 of 44

or obligation upon Ameriquest to disclose these Fees; (3) Rule 2016 of the Federal Rules of

Bankruptcy Procedure does not impose a duty or obligation upon Ameriquest to disclose these

Fees; and (4) the mortgage contract between Ameriquest and the Plaintiffs does not impose a

duty or obligation upon Ameriquest to disclose these Fees. Ameriquest cites *Padilla v. GMAC*

*Mortgage Corp. (In re Padilla)*, 389 B.R. 409 (Bankr. E.D. Pa. 2008) for support of its

arguments that an oversecured creditor has no duty or obligation to disclose post-petition, pre-

confirmation fees and charges similar to those disputed in the present matter. Additionally,

Ameriquest asserts that *In re Madison* and *In re Sanchez* are distinguishable.

### (i)     The Plaintiffs' Confirmed Plan

Ameriquest contends that the Confirmation Order dated December 28, 2006, provides

that "[t]he debtor's mortgage debt to AMC Mortgage Services shall be paid directly to the

mortgagee beginning November, 2006," and that the Plaintiffs' pre-petition arrears "through

October, 2006" would be cured through plan payments. (*See* Amer. Br. 26 (citing Confirmation

Order ¶ 6, Proceeding No. 45).) Thus, the debtor's confirmed plan, like the debtor's confirmed

plan in *Padilla*, placed no duty or obligation upon Ameriquest to disclose the disputed Fees in

the present matter.

### (ii)     The Bankruptcy Code

Ameriquest argues that § 1322(b)(2) prohibits a confirmed plan from modifying the

contractual rights of a creditor if the creditor is secured by a security interest in the "real property

that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). Ameriquest argues that since

Plaintiffs' Plan fails to refer to or provide for payment of post-petition, pre-confirmation fees,

then they are part of the direct and ongoing obligations to be paid to Ameriquest. Thus,

36

Ameriquest need not disclose these Fees in its Proof of Claim.

Ameriquest next relies on § 506(b) to assert that oversecured creditors may recover "any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."  11 U.S.C. § 506(b).  Therefore, Ameriquest had no duty to disclose the disputed Fees under § 506(b) because the terms of the mortgage contract did not impose any disclosure obligation(s) upon Ameriquest with respect to the charging of the disputed Fees.  In response to those Alabama bankruptcy court decisions which have concluded that the "reasonableness requirement in § 506(b) imposes an obligation on a secured creditor to provide notice to the debtor of such charges,"[36] Ameriquest asserts that those decisions failed to distinguish between the "cure and maintenance plan" of § 1322(b)(5) and the "payoff plan" under § 1325(a)(5).  (*See* Amer. Br. 27.)

According to Ameriquest, the distinction between these two types of plans is important because the legal consequences of each are significantly different.  Specifically, a debtor who pays off in full her secured claim under a § 1322(a)(5) plan receives a discharge of the underlying debt pursuant to § 1328(a), whereas a debtor's satisfaction of a § 1322(b)(5) "cure and maintenance plan" simply brings the debtor's account current.  Consequently, a secured creditor that fails to disclose post-petition, pre-confirmation fees pursuant to § 506(b) in connection with a § 1322(a)(5) "payoff plan" loses the right to payment of these fees upon the successful completion of said plan.  Conversely, "a secured lender retains the right to pursue post-petition

---

[36]Ameriquest cites:  *Powe v. Chrysler Fin. Corp. (In re Powe)*, 278 B.R. 539, 553 (Bankr. S.D. Ala. 2002); *Noletto v. NationsBanc Mortgage Corp. (In re Noletto)*, 281 B.R. 36, 47 (Bankr. S.D. Ala. 2000).

charges as delineated by the parties' contract" upon both the confirmation and completion of a §

1322(b)(5) plan. (*See* Amer. Br. 28 (citing *In re Padilla*, 389 B.R. at 440-41))  Therefore,

according to Ameriquest, because these contractual rights are not extinguished by a § 1322(b)(5)

"cure and maintenance plan," "and [because] the Bankruptcy Code propounds no limitations on

contractual post-petition obligations," a secured creditor like Ameriquest is not required to

comply with the disclosure obligations of § 506(b) when the debtor, like the Plaintiffs in the

present matter, has entered into a § 1322(b)(5) "cure and maintenance plan."  (*See* Amer. Br. 28.)

But even if the Alabama decisions are correct, Ameriquest notes that the policy behind these

decisions - giving the debtor notice of all post-petition, pre-confirmation charges so that the

debtor may choose whether or not she/he wants to cure pre-petition arrears "through the plan or

outside of the plan" - has been satisfied in the present matter because

> [b]y the terms of the Sandlins' Confirmed Plan, they implicitly
> made that choice: The Confirmed Plan provides that the Sandlins'
> pre-petition delinquencies (i.e. "through October, 2006") would be
> satisfied through the payments under the plan, and any post-
> petition mortgage debt (i.e., "beginning November, 2006") would
> be satisfied through payments directly to Ameriquest.

(*See* Amer. Br. 28-29 (citing Confirmation Order ¶ 6, Proceeding No. 45))  Further, Ameriquest

asserts that the Plaintiffs were aware of the disputed Fees because they were "disclosed in the

Sandlins' note and mortgage."[37]  (*See* Amer. Br. 29 (citing Pls. Mortgage & Note, Amer. Ex. A.))

Additionally, Ameriquest argues that § 506(b) is not applicable in the present matter

because of the effect of § 1322(e), which provides that "notwithstanding subsection (b)(2) of this

---

[37]In response to Plaintiffs' contention that they were unaware of the disputed Fees,
Ameriquest cites the case of *Singleton v. Protective Life Ins. Co.*, 857 So. 2d 803, 814 (Ala.
2003), which notes that "there can be no suppression [of information] if the information allegedly
suppressed is in a form signed by the party complaining about the suppression."

section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."  11 U.S.C. § 1322(e).  Because "Default" was defined by the Note as the failure to pay the "full amount of each monthly payment on the date it is due," Ameriquest asserts that the amount listed on the proof of claim - the sum of two missed monthly payments and three late charges - was the amount necessary to cure the default in the present matter because it is consistent with the underlying agreement's definition of "Default;" therefore, disclosure of the disputed Fees was unnecessary.  (*See* Amer. Br. 30 (citing Pls. Note § 7(B), Amer. Ex. A.))  Further, Ameriquest asserts that the charges noted on Ameriquest's Proof of Claim are not contrary to nonbankruptcy law.  Thus, Ameriquest asserts that it, like the creditor in *Padilla*, had no statutory duty or obligation to disclose the disputed post-petition, pre-confirmation Fees.

### (iii)    The Federal Rules of Bankruptcy Procedure

Ameriquest asserts that it sought payment from the Plaintiffs, not from the Plaintiffs' bankruptcy estate, after the sale of the Plaintiffs' residence; therefore, because Rule 2016 is only applicable to a creditor that seeks "interim or final compensation for services, or reimbursement of necessary expenses, from the estate;" Rule 2016 is inapplicable.  Fed. R. Bankr. P. 2016(a).

### (iv)    Plaintiffs' Loan and Mortgage

Lastly, Ameriquest asserts that Plaintiffs' Loan does not impose any duty or obligation on Ameriquest to disclose the disputed post-petition, pre-confirmation Fees.  Ameriquest cites to Section 8 of Plaintiffs' Mortgage, which provides that Ameriquest "may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this

39

Security Instrument" in the event the Plaintiffs enter into a bankruptcy proceeding that might affect Ameriquest's interest in the real property secured by the mortgage contract.  (*See* Amer. Br. 32 (citing Pls. Mortgage § 8, Amer. Ex. A.))[38]  Section 8 also provides that those amounts expended in relation to such a bankruptcy proceeding will be payable "upon notice to Borrower requesting payment."  *Id.*  Ameriquest asserts that it had no duty or obligation under the Loan to disclose the disputed post-petition, pre-confirmation Fees.

>    (v)    **Distinguishable From *In re Madison* and *In re Sanchez***

Ameriquest argues that the dispute in *In re Madison* arose out of the creditors' inclusion of, as opposed to non-disclosure of, certain post-petition, pre-confirmation charges on the Plaintiff's proof of claim.  *See In re Madison*, 337 B.R. at 101.  Ameriquest also points out that *In re Madison* was decided in a jurisdiction that does not re-vest property of the bankruptcy estate in the debtor upon confirmation, contrary to the Eleventh Circuit's decision in *In re Telfair*.[39]

Similarly, Ameriquest contends that *In re Sanchez* also involved a factual scenario in which the debtors' bankruptcy estate had not re-vested in the debtors upon confirmation.  *See In re Sanchez*, 372 B.R. at 302.  Ameriquest also attempts to distinguish *In re Sanchez* by claiming they did disclose the charges:  "Unlike *Sanchez* . . . Ameriquest disclosed the post-petition

_____

[38]Ameriquest's Exhibit A does not include the language of Section 8 of the Mortgage. Plaintiff's initial complaint (adv. proc. doc. no. 1, Ex. C) does provide the language of Section 8 of the Mortgage.

[39]In *Telfair*, the Eleventh Circuit held that "'the [bankruptcy] plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan.'" 216 F.3d 1333, 1340 (quoting *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997)).

charges to the Sandlins, their attorney, the Trustee and the Court in January 2007, more than (5) months before the Sandlins paid such charges."[40]  (*See* Amer. Reply 13)

### (c)    The Court's Analysis

As noted by Ameriquest, a number of Alabama cases[41] have held that § 506(b) imposes a duty on oversecured creditors to disclose post-petition, pre-confirmation fees.  In the case of *In re Sheffield v. Home Side Lending (In re Sheffield)*, 281 B.R. 67, 73 (Bankr. S.D. Ala. March 6, 2001)(citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)), Judge Mahoney held that disclosure of post-petition, pre-confirmation fees and charges is necessary to satisfy due process.  Without disclosure of these fees and charges, debtors and other interested parties lose the opportunity to object to said fees and charges.

Additionally, in *In re Slick*, Judge Mahoney held that § 506(b) charges

> can be paid through the plan. [Therefore,] [t]he debtor has a choice to make-- to pay the debt in the plan or to allow it to be added to the debt and paid after the bankruptcy case is concluded.  If a creditor fails to disclose those charges, they cannot be added

---

[40]Ameriquest also notes that the *Sanchez* court, in considering the creditor's Motion for Reconsideration, did not indicate that the disclosure of the disputed Fees in the letter and forbearance agreement, which was similar to the notation of the disputed Fees in the Krueger Affidavit, was inadequate.

[41]*See Slick v. Norwest Mortgage, Inc. (In re Slick)*, Case No. 98-14378, Adv. No. 99-1136 2002 Bankr. LEXIS 772 (Bankr. S.D. Ala. May 10, 2002); *Harris v. First Union Mortgage Corp. (In re Harris)*, Case No. 96-14029, Adv. No. 99-1144 (Bankr. S.D. Ala. December 29, 2000)(text available at <www.alsb.uscourts.gov>); *Miller v. First Union Mortgage Corp. (In re Miller)*, Case No. 97-12807, Adv. No. 99-1137 (Bankr. S.D. Ala. December 29, 2000)(text available at <www.alsb.uscourts.gov>); *Noletto v. NationsBanc Mortgage Corp. (In re Noletto)*, Case No. 98-13813, Adv. No. 99-1120 (Bankr. S.D. Ala. December 29, 2000)(text available at <www.alsb.uscourts.gov>); *Sheffield v. HomeSide Lending, Inc. (In re Sheffield)*, Case No. 97-10511, Adv. No. 99-1124 (Bankr. S.D. Ala. December 29, 2000)(text available at <www.alsb.uscourts.gov>).

later....If the fee is not disclosed, it is discharged.

Case No. 98-14378, Adv. No. 99-1136 2002 Bankr. LEXIS 772 at *18-19. In other words, because debtors have the right to choose whether to include § 506(b) fees and charges in the payments to and from the Chapter 13 Trustee, all § 506(b) fees and charges must be disclosed so that debtors may determine which, if any, § 506(b) fees and charges they want to pay through the Trustee as opposed to paying directly.

This Court adopts the well-reasoned opinions of Judge Mahoney.[42] The Court finds that Ameriquest had a duty to properly disclose the post-petition, pre-confirmation Fees in this case in order to (1) afford the Plaintiffs the opportunity to object to these Fees or (2) to give the Plaintiffs the opportunity to satisfy these Fees within their § 1322(b)(5) "cure and maintenance plan." This Court rejects Ameriquest's arguments that Plaintiffs had notice of these Fees via the terms of the Loan and the Krueger Affidavit or that the Plaintiffs may have or should have known that fees such as the disputed Fees were possible pursuant to the terms of the Loan. Clearly, Plaintiffs did not have notice of the specific amounts of these Fees from Ameriquest's Proof of Claim, which is a necessary and required ingredient for proper disclosure. This Court concludes that disclosing the specific amounts of the disputed Fees several months later than the filing of the Proof of

---

[42]The Committee on Rules of Practice and Procedure of the Judicial Conference of the United States also appears to agree with Judge Mahoney's opinion. The Committee recently proposed a new Rule 3002.1, which would require disclosure of postpetition, preconfirmation fees. Specifically, subdivision (c) of the proposed Rule 3002.1 would "require notice of any postpetition fees, expenses, or charges against the debtor or the property, such as late fees or inspection fees. Service and filing of this notice would be required, as a supplement to the proof of claim, within 180 days after the additional amounts were incurred, but again no presumption of validity would arise." *See* Eugene R. Wedoff, *Proposed New Bankruptcy Rules on Creditor Disclosure and Court Enforcement of the Disclsoures - Open for Comment*, 83 AM. BANKR. L.J. 579, 583 (Fall, 2009).

Claim in the post-confirmation Krueger Affidavit does not meet the disclosure requirement outlined by Judge Mahoney. This affidavit was filed in support of a motion for relief from stay. The addition of these Fees at that point was presumably to show an increased payoff amount and perhaps increase the likelihood of success on that motion. The Fees were not disclosed for the purpose of disclosure or notice to Plaintiffs.

This Court also adopts the reasoning of Judge Houston that the debtor should be able to exit Chapter 13 without unknown, undisclosed fees added to their account after the filing of the case and before confirmation of the plan. *See In re Madison*, 337 B.R. at 104. If the fees are disclosed, debtors can completely cure these amounts pursuant to § 1322(b)(5). There is no language in that section that allows or permits Ameriquest to avoid § 506(b) disclosure and determination of the reasonableness of fees added to an account. The Court reads § 1322(e) to mean that the amount of these disputed Fees will be governed by the Plaintiffs' Loan and applicable nonbankruptcy law, but not to govern or limit the Court under the reasonableness test of § 506(b).

### 3. Conclusion on Ameriquest's Motion for Summary Judgment

The Court finds that Ameriquest's Motion for Summary Judgment on Plaintiffs' Count Three is due to be **GRANTED**; Count Five of Plaintiffs' Amended Complaint is due to be rendered **MOOT**; and Ameriquest's Motion for Summary Judgment on Plaintiffs' Counts Two and Four is due to be **DENIED**.

A separate order consistent with this Memorandum Opinion will be entered.

Dated this the 8th day of April, 2010.

Case 08-00191-TOM    Doc 177    Filed 04/08/10    Entered 04/08/10 15:06:49    Desc Main
Document      Page 43 of 44

/s/ Tamara O. Mitchell
United States Bankruptcy Judge

TOM: rdt

xc:    Robert Keller and Lange Clark, attorneys for Plaintiffs
John Scott, Rik Tozzi and Todd Cox, attorneys for Citi Residential Lending, Inc.
Michael Hall, Stephen Bumgarner, S. Greg Burge, Edward Cotter and Marc Solomon, attorneys for Ameriquest Mortgage Company and AMC Mortgage Services, Inc.